NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MORGAN F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.F., *Appellees*.

No. 1 CA-JV 19-0305
FILED 4-21-2020

Appeal from the Superior Court in Maricopa County
No. JD532052
The Honorable Karen L. O'Connor, Judge (Retired)

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose
*Counsel for Appellee Department of Child Safety*

_____

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

_____

**W I L L I A M S**, Judge:

**¶1**        Morgan F. ("Mother") appeals the juvenile court's order severing her parental rights to her child, D.F. ("Child"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Mother and Matthew M. ("Father") are the parents of Child. Father's involvement in Child's life did not extend beyond Child's infancy,[1] and Mother raised Child with A.K. ("Stepfather") from the time Child was four months old. Mother has another child in common with Stepfather who is not at issue in this matter. In January 2017, Mother left Child with Stepfather, possibly due to Mother's mental health and substance abuse issues, and had no further contact with Child. In October 2018, the Department of Child Safety ("DCS") investigated a report relative to Stepfather, where DCS learned that no legal parent or guardian was present in Child's life. Consequently, in October 2018 DCS initiated a dependency action.

**¶3**        Unable to locate Mother or Father, approximately four months later DCS filed a petition for termination of Mother's parental rights, alleging she "ha[d] abandoned the child and failed to maintain a normal parental relationship with the child without just cause by failing to provide reasonable support, failing to maintain regular contact, and/or failing to provide normal supervision."

**¶4**        Mother first contacted DCS and appeared in court in April 2019. She requested visitation with Child, but was directed to first participate in reunification services. Shortly thereafter a psychologist recommended, given the length of time Mother had been absent from Child's life, that Mother begin working toward re-establishing a

_____

[1] Father's parental rights to Child were terminated in the same proceeding, but he is not a party to this appeal.

relationship with Child by first writing letters or cards that could be reviewed with the Child during therapy sessions. Mother wrote no cards or letters, provided no financial support and failed to participate in any required drug testing.

¶5      Following a trial, the juvenile court granted DCS' petition, finding that: 1) Mother abandoned Child and 2) termination was in Child's best interest. Mother timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-120.21(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

I.     *Reasonable Evidence Supports the Juvenile Court's Finding that Mother Abandoned Child.*

¶6      We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and viewing the evidence in the light most favorable to sustaining the court's ruling. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

¶7      To justify termination of a parent-child relationship, the juvenile court must find, by clear and convincing evidence, the existence of at least one of eleven statutory grounds set forth in A.R.S. § 8-533. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Abandonment, as defined in A.R.S. § 8-531(1) below, is one of those grounds:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause *for a period of six months* constitutes prima facie evidence of abandonment.

(Emphasis added.)

¶8 Mother contends that both the juvenile court and DCS interfered with her ability to visit Child, and thus maintain a parent-child relationship, when she was denied visitation following her reappearance in April 2019. However, when Mother returned in 2019, after having been absent from Child's life since January 2017, DCS sought a psychologist's recommendation regarding reintroduction of Mother into Child's life to avoid anything that "might be traumatic" for Child. The recommendation, which was followed by both DCS and the juvenile court, required that Mother begin her reintroduction into Child's life first through cards and letters before visitation could occur. Mother was made aware of this requirement at two separate court hearings, but failed to comply. Because Mother failed to take the initial step of writing letters or cards to Child, the progression of Mother's reintroduction into Child's life through visitation never occurred. The opportunity for Mother to participate in visitation with Child was not lost due to DCS' or the juvenile court's failure as Mother claims, but due to Mother's failure to act.

¶9 The juvenile court found Mother's failure "to provide written correspondence for the child before in-person visits could take place" constituted "less than minimal efforts" to maintain a normal parent-child relationship. And, although the court acknowledged Mother had recently engaged in individual counseling, the court also found Mother had refused to either drug test or provide any financial support to Child.

¶10 We cannot say the juvenile court erred in concluding Mother's failure to have any communication with Child for more than two years, coupled with inaction in reintroducing herself into Child's life through the beginning steps of written correspondence, demonstrated anything but *less than minimal efforts* to maintain a normal parent-child relationship.

¶11 For these reasons, the juvenile court's finding is supported by the record and not clearly erroneous or an abuse of discretion.

II. *Reasonable Evidence Supports the Juvenile Court's Finding that Terminating Mother's Parental Rights Was in Child's Best Interests.*

¶12 In addition to proving grounds exist for termination, DCS must prove, by a preponderance of the evidence, that terminating a parent's rights would be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We review the best interests finding for an abuse of discretion. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018).

¶13        Mother argues the evidence shows Child would suffer a considerable detriment if the parent-child relationship were terminated. Specifically, Mother contends Child's current placement puts Child at a "great risk of abuse" due to an investigation of Stepfather. Further, if Child's current placement with Stepfather were to end, Child could be placed in a foster home with a complete stranger, which would not be a benefit to Child.

¶14        While it is true that DCS investigated Stepfather for allegations of a threat involving a gun and an allegation of discipline techniques leaving bruises on Child (or her sibling), there is nothing in the record indicating those allegations were substantiated.

¶15        Further, although the court determined Child's "needs are being met" in her current placement with Stepfather and that he was an option to adopt Child, DCS also indicated it was in the process of identifying other potential family members as adoption alternatives. The record supports the court's finding that "the child is adoptable" and termination of parental rights was in Child's best interest. In making its findings, the juvenile court did not abuse its discretion, nor were its findings erroneous.

**CONCLUSION**

¶16        For the foregoing reasons, we affirm the juvenile court's order severing Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA